No. 22-50690

# In the United States Court of Appeals for the Fifth Circuit

Texas State LULAC; Voto Latino,

*Plaintiffs-Appellees,*

*v.*

Bruce Elfant; et al.,

*Defendants,*

*v.*

Lupe C. Torres, in her official capacity as the Medina County Elections Administrator; Terrie Pendley, in her official capacity as the Real County Tax Assessor-Collector; and Ken Paxton, Texas Attorney General,

*Intervenor Defendants-Appellants.*

On Appeal from the United States District Court for the Western District of Texas, Austin Division

## INTERVENOR DEFENDANTS-APPELLANTS' OPPOSED MOTION FOR A STAY PENDING APPEAL AND FOR AN ADMINISTRATIVE STAY

(Counsel listed on inside cover)

ROBERT HENNEKE
General Counsel

CHANCE WELDON
Director of Litigation

AUTUMN HAMIT PATTERSON
Senior Attorney
apatterson@texaspolicy.com

Texas Public Policy Foundation
901 Congress Avenue
Austin, Texas 78701
Tel.: (512) 472-2700
Fax: (512) 472-2728

Counsel for Intervenor Defendants-Appellants Lupe C. Torres and Terrie Pendley

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JUDD E. STONE II
Solicitor General

LANORA C. PETTIT
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

BETH KLUSMANN
Assistant Solicitor General

CHRISTOPHER J.F. GALIARDO
Assistant Attorney General

KATHLEEN T. HUNKER
Special Counsel

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Intervenor Defendant-Appellant Ken Paxton

# Certificate of Interested Persons

No. 22-50690

### Texas State LULAC; Voto Latino,
*Plaintiffs-Appellees,*

*v.*

### Bruce Elfant; et al.,
*Defendants,*

*v.*

### Lupe C. Torres, in her official capacity as the Medina County Elections Administrator; Terrie Pendley, in her official capacity as the Real County Tax Assessor-Collector; and Ken Paxton, Texas Attorney General,
*Intervenor Defendants-Appellants.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, appellants, as governmental parties, need not furnish a certificate of interested persons.

/s/ Lanora C. Pettit
Lanora C. Pettit
*Counsel of Record for Intervenor*
*Defendant-Appellant Ken Paxton*

i

# Table of Contents

Page

Certificate of Interested Persons ...................................................................i

Introduction.................................................................................................. 1

Background ................................................................................................... 2

    I.   Senate Bill 1111 ................................................................................ 2

    II.  Procedural History ........................................................................... 4

Statement of Jurisdiction ............................................................................. 6

Argument...................................................................................................... 6

    I.   Intervenors Are Likely to Succeed on Appeal. ............................... 7

        A.  The Court is likely to find the district court lacked
            jurisdiction. ................................................................................ 7

            1.   Plaintiffs lack Article III standing................................... 7

            2.   Plaintiffs lack statutory standing. ............................... 11

        B.  The Court is likely to reject plaintiffs' claims on the merits. ............ 12

            1.   P.O.-box provision..................................................... 12

            2.   Residence provision.................................................... 14

            3.   Temporary-relocation provision ................................. 16

    II.  The Remaining *Nken* Factors Favor a Stay. ............................... 18

    III. The Court Should Enter a Temporary Administrative Stay. .................... 20

Conclusion.................................................................................................. 21

Certificate of Conference............................................................................ 22

Certificate of Service.................................................................................. 22

Certificate of Compliance .......................................................................... 23

## Introduction

The Texas Legislature enacted Senate Bill 1111 to reinforce a fundamental state policy: people should vote where they live. This policy—which the district court agreed was legitimate—helps not just to combat voter fraud but also to ensure that voters get the right ballot. S.B. 1111 seeks to further that policy by (1) requiring voters who register using commercial P.O. boxes to confirm their residences, (2) forbidding voters from listing a false residence to influence an election, and (3) clarifying where individuals who live in a temporary residence should vote.

Despite extensive discovery, Plaintiffs cannot identify any voter who has been harmed by these commonsense provisions. Nevertheless, they insist—and the district court largely agreed—S.B. 1111 chills their speech and unconstitutionally burdens the voting rights of Texas residents. Relying largely on potential injury to college students, the court permanently enjoined six county registrars from enforcing S.B. 1111 against *anyone* in their counties but did *not* enjoin S.B. 1111's enforcement in counties housing some of the State's most prestigious universities.[1]

Because the district court's order creates confusion and disuniformity less than two months before voter registration closes for the November 2022 election, Intervenors asked the district court to stay its order by Friday, August 12. Because that court has not responded, this Court should issue a stay pending appeal.

---

[1] The enjoined defendants include the voter registrars in Travis, Bexar, Harris, Hidalgo, Dallas, and El Paso Counties, App.7-8, but omit (among others) the registrars in Lubbock (home of Texas Tech), Brazos (Texas A&M), or McClennan (Baylor) Counties.

Intervenors have raised substantial arguments regarding both the district court's jurisdiction and the merits of Plaintiffs' claims, which are likely to succeed on appeal. Moreover, the remaining stay factors favor a stay for the reasons extensively explored in *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam), and its progeny.

Intervenors request a stay pending appeal as quickly as is practicable: because the district court's order is not statewide, it is likely to cause confusion among the very voters it purports to protect—namely, those without fixed addresses or who reside at a temporary address. The effect of that confusion will only grow as there is typically a significant uptick in registration leading up to the deadline—here, October 11. In the alternative, Intervenors request an administrative stay while the Court considers this motion.

## Background

### I.  Senate Bill 1111

S.B. 1111 became law in Spring 2021. Act of May 27, 2021, 87th Leg., R.S., ch. 869, 2021 Tex. Sess. Law Serv. 2142. Relevant here, S.B. 1111 made three changes to the Texas Election Code's provisions regarding residency.

*P.O.-box provision:* To ensure that voters vote where they live, Texas law has for some time permitted a voter registrar to seek confirmation of a voter's residence if the registrar had reason to believe it differed from the address listed in his registration records. Tex. Elec. Code § 15.051(a) (2020). Such confirmation was provided on a pre-printed form, returned in a postage pre-paid envelope. *Id.* § 15.052(b). A voter who failed to respond was placed on the "suspense list": the

voter could still vote by regular ballot provided he submitted a statement of residence that satisfies Texas Election Code section 63.0011. *Id.* §§ 15.081(a)(1), 15.112.

S.B. 1111 modified these provisions to require a registrar to seek confirmation from a voter who registers using an address that does not correspond to a residence (*e.g.*, a commercial P.O. box). *Id.* § 15.051(a). S.B. 1111 also requires such a voter to submit documentation of his residence or an affidavit that the voter's residence has no address. *Id.* §§ 15.053(a)(3), 15.054. Voters have a variety of options for acceptable documentation, including a photocopy of a driver's license, concealed carry permit, or utility bill (among others). *Id.* § 15.054(a).

*Residence provision:* Following several instances where voters sought to influence an election by registering under false addresses, App.124-25, S.B. 1111 also amended Texas Election Code section 1.015(b) to provide that "[a] person may not establish residence for the purpose of influencing the outcome of a certain election." Consistent with its history and his role in interpreting Texas election law, *id.* §§ 31.003, .004, the Texas Secretary of State has interpreted this provision to prohibit a voter from registering using an address where the voter does not reside to influence an election. App.123-30.

*Temporary-relocation provision:* Finally, S.B. 1111 added subsection (f) to Texas Election Code section 1.015, which provides a person may not (1) "establish a residence at any place the person has not inhabited," and (2) "designate a previous residence as a home and fixed place of habitation unless the person inhabits the place at the time of designation and intends to remain."

3

## II.  Procedural History

**A.** Plaintiffs are organizations that seek to promote voter education, registration, and turnout in the Latino community. App.5-6. Asserting S.B. 1111 hinders their mission, they sought to enjoin the voter registrars in six of Texas's 254 counties from enforcing the law. App.7-8. Plaintiffs alleged that (1) the residence provision violates the First Amendment by chilling political speech, and (2) all three provisions unduly burden the right of all Texans to vote in violation of the First and Fourteenth Amendments and young voters in violation of the Twenty-Sixth Amendment. App.13-18.

Texas's Attorney General intervened to defend the constitutionality of S.B. 1111, and local election officials in Medina and Real Counties, intervened to protect their interests. App.23-26. Following discovery, Plaintiffs and Intervenors filed cross-motions for summary judgment. App.56-1081. The six local defendants generally took no position on the merits of S.B. 1111. App.1084.

**B.** On August 2, the district court determined that Plaintiffs lacked associational standing because they could not show a single member who was harmed by S.B. 1111. App.1088-89. Nevertheless, the district court largely granted Plaintiffs' motion for summary judgment. App.1082-1114. It found that Plaintiffs had organizational standing because Plaintiffs (1) had diverted resources to counteract S.B. 1111's effects, and (2) experienced a subjective chill to their speech. App.1087-94. The court next concluded that Plaintiffs *lacked* statutory standing to sue on behalf of their members under 42 U.S.C. § 1983 but could proceed based on their organizational injuries. App.1094-97.

On the merits, the court *first* concluded that the P.O.-box provision was generally a reasonable—and constitutional—way to further Texas's legitimate interests in ensuring that voters received the right ballot and preventing voter-registration fraud. App.1103-07. The court, however, determined it was *unreasonable* to require documentation if an individual registered using a commercial P.O. box but responded to the confirmation request by providing a residential address. App.1107-08. In such instances, the court thought, the confirmation response should function as a change-of-address form (which does not require documentation). App.1107-08.

*Second*, the court held that the residence provision was overbroad, vague, and burdensome. App.1108-11. The district court rejected the Secretary of State's construction, which would have limited the provision to voters who listed a false residence. App.1110. Instead, the court insisted the provision prohibited establishing a true residence for purposes of influencing an election, which could prohibit, for example, moving to run for office. App.1109-10. Having interpreted the residence provision far more broadly than the state officer charged with interpreting the State's election law, the court then unsurprisingly concluded the residence provision severely burdened the right to vote and was unjustified by the State's asserted interests. App.1110-11.

*Third*, the court held that the temporary-relocation provision was unconstitutional under the First and Fourteenth Amendments because college students might not have a place to vote. App.1112-13. Specifically, the court believed subsection (f) prohibited college students from registering at their parents' home (where they did not physically reside), but that subsection (d) prohibited them from

registering at school (where they did not intend to permanently remain). App.1112-13. The district court, however, did not find any violation of the Twenty-Sixth Amendment. App.1112-13.

Thus, the court enjoined defendants from enforcing the residence (section 1.015(b)) and temporary-relocation provisions (section 1.015(f)) in their entirety. It also enjoined defendants from enforcing the P.O.-box provision (section 15.053(a)) against voters who provide a residential address upon request. App.1113-14.

**C.** Intervenors appealed and sought a stay pending appeal by August 12. App.1119-35. The district court has not ruled on Intervenors' motion.

## Statement of Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1291.

## Argument

This Court has the "inherent" power to issue a stay pending appeal where: (1) the movant is likely to succeed on the merits; (2) the movant will suffer irreparable harm absent a stay; (3) the respondent will not be substantially harmed by a stay; and (4) the public interest favors a stay. *Nken v. Holder*, 556 U.S. 418, 426 (2009); *Texas v. United States*, 40 F.4th 205, 215 (5th Cir. 2022) (per curiam). Where the "balance of the equities weighs *heavily* in favor of granting the stay" then only a "*serious legal question*" is required. *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020). Intervenors easily meet that standard.

## I.    Intervenors Are Likely to Succeed on Appeal.

Intervenors are entitled to a stay because they are likely to show the district court *both* lacked jurisdiction and misapplied the controlling legal test on the merits.

### A.    The Court is likely to find the district court lacked jurisdiction.

Intervenors' appeal is likely to succeed first because Plaintiffs did not meet their burden of demonstrating Article III standing, and "in the absence of standing, the court has no 'power to declare the law.'" *In re Gee*, 941 F.3d 153, 161 (5th Cir. 2019) (per curiam). Further, Plaintiffs lack statutory standing under section 1983.

#### 1.    Plaintiffs lack Article III standing.

To establish standing under Article III, Plaintiffs must prove that (1) they have suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, which is (2) fairly traceable to the enforcement of the specific challenged provision, and (3) likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also California v. Texas*, 141 S. Ct. 2104, 2115, 2119 (2021). The district court correctly rejected Plaintiffs' claims of associational standing but erred in concluding they had organizational standing based on either a resource-diversion or a First Amendment theory.

**a.** The district court erred in holding that Plaintiffs had standing because they diverted resources to voting legislation in Texas and elsewhere (including S.B. 1111). App.1089-91. To establish organizational standing on such a theory, Plaintiffs must show that defendants' enforcement of *S.B. 1111*, "significantly and 'perceptibly impaired'" their ability to pursue their mission, resulting in a "drain" on their

resources. *NAACP v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010). Such an injury must be "concrete and demonstrable." *Id.* "Mere redirection of resources" is not sufficient, as "there is 'no legally-protected interest in *not* expending" resources "on behalf of individuals for whom [the plaintiff] . . . advocates.'" *League of United Latin Am. Citizens v. Abbott*, No. 3:21-CV-259-DCG-JES-JVB, 2022 WL 1631301, at *5 (W.D. Tex. May 23, 2022) (quoting *Ass'n for Retarded Citizens v. Dall. Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994)). Plaintiffs failed to prove the necessary diversion of resources for at least two reasons.

*First*, Plaintiffs failed to identify resources specifically diverted to counteract S.B. 1111—as opposed to counteracting other laws. LULAC's representative described how it diverted resources from immigration and criminal-justice reform efforts to deal with "voter suppression efforts" in Texas, App.579, but could not identify what portion of the resources (if any) went to counteract S.B. 1111—as opposed to S.B. 1 or other voting laws. App.579-80. Voto Latino's representative did not even identify what portion of the alleged diversion resulted from changes to the law *in Texas*. App.559-60 (referencing "the laws that were passed in the State of Texas and others"). Because Plaintiffs could not point to a drain on their resources attributable to the challenged provisions alone, they lacked standing. *California*, 141 S. Ct. at 2115, 2119.

*Second*, Plaintiffs failed to show how their efforts to counteract S.B. 1111 differ from their routine activities to educate indivdiuals regarding state election laws. App.6-7; *Ass'n for Retarded Citizens*, 19 F.3d at 244; *Def. Distributed v. U.S. Dep't of State*, No. 1:15-CV-372-RP, 2018 WL 3614221, at *4 (W.D. Tex. July 27, 2018).

Plaintiffs' testimony suggests that, at most, they had to change the content of their answers in response to questions from voters, App. 559-60, candidates, App.569-70, or volunteers, App.578. Plaintiffs' "self-serving observation that [they have] expended resources to educate [their] members and others regarding [S.B. 1111] does not present an injury in fact" because there is no evidence that S.B. 1111 has subjected them to "operational costs beyond those normally expended to review, challenge, and educate the public" about voting legislation. *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995).[2]

Put another way, Plaintiffs may have offered proof that S.B. 1111 *impacts* Plaintiffs' mission to explain what Texas law requires. But they have not shown it to be *contrary* to Plaintiffs' mission—or Plaintiffs would presumably have been able to show an impacted member. Where, as here, the government's conduct "does not directly conflict with [an] organization's mission," it is unlikely to be sufficient to establish an injury in fact. *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996). And Plaintiffs have not shown this case to be an exception.

**b.** The district court also erroneously concluded that Plaintiffs suffered an injury because S.B. 1111 chilled their speech regarding how to advise voters. App.1092-94. As an initial matter, Plaintiffs brought a First Amendment challenge only to the residence provision. App.13-16. Because "standing is not dispensed in gross," any

---

[2] Plaintiffs' evidence contrasts with, for example, *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017), where the organizational plaintiffs demonstrated how the change in law required longer conversations with voters, reducing the number of individuals with whom they could speak.

chill-based injury could not establish standing as to the P.O.-box or temporary-relocation provisions. *In re Gee*, 941 F.3d at 160. But Plaintiffs' threadbare evidence of chill does not even establish standing as to the residence provision.

To establish standing under a chilled-speech theory, Plaintiffs must demonstrate that their desired speech is arguably proscribed by the challenged statute. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014). Assuming that Plaintiffs have shown that uncertainty about the law has changed what they plan to say, that does not (standing alone) establish standing: instead, "the change in plans must still be in response to a reasonably certain injury imposed by the challenged law." *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018).

But no evidence or law supports concluding that Plaintiffs' alleged uncertainty would lead to the injury they hypothesize—namely, criminal prosecution. App.999-1000. Plaintiffs have not identified any prosecutor that intends to prosecute them for their speech under S.B. 1111. Indeed, they have not even shown how S.B. 1111 creates any criminal penalties for Plaintiffs' speech: Plaintiffs and the district court point to statutes regarding illegal voting and fraudulent registration. App.1093 (addressing Tex. Elec. Code §§ 64.012, 276.018).[3] But those statutes criminalize the knowing and intentional conduct of *the voter*, Tex. Elec. Code §§ 64.012, 276.018, and Plaintiffs are not voters. Although "helping someone to commit a crime is a crime," App.1093, criminal liability attaches only if Plaintiffs *intend* to promote the commission of a crime by encouraging or aiding another in the offense. Tex. Penal

---

[3] The district court cited section 276.012 but quoted section 276.018.

Code § 7.02(a)(2). Plaintiffs presented no evidence that they intend to encourage voters to (knowingly) vote illegally or submit false voter-registration applications.

Instead, Plaintiffs rely on one long chain of speculation: Plaintiffs must encourage or assist a voter in violating the law; the voter then knowingly or intentionally casts an illegal ballot or submits a false registration form; the voter registrar discovers this and notifies the local prosecutor; and the local prosecutor decides to prosecute Plaintiffs—nonprofit organizations—for aiding and abetting illegal voting. Such a "highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). That is particularly true as it involves the independent actions of third parties (voters and prosecutors) that are not before the Court, *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976), and some actions that may be unlawful, *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

Stripped of this speculation, Plaintiffs have demonstrated (at most) a subjective chill, which is "not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). The district court erred in holding otherwise.

### 2.   Plaintiffs lack statutory standing.

In addition to lacking Article III standing, Plaintiffs also lack statutory standing under section 1983 to raise free-speech and right-to-vote claims that do not belong to them. *Vote.Org v. Callanen*, 39 F.4th 297, 304 (5th Cir. 2022). Because the district court concluded that Plaintiffs lack third-party standing to sue on behalf of their members, App.1095-96, Plaintiffs can complain only of direct injuries to themselves.

But Plaintiffs are not required to comply with any of the challenged provisions of S.B. 1111. Instead, S.B. 1111 impacts where an individual may register to vote. Thus, any section 1983 claim would run to affected *voters*—not *Plaintiffs*. *See, e.g.*, *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 390 (5th Cir. 2013). Accordingly, section 1983 does not allow Plaintiffs, who are not "the party injured," to sue. *Vote.Org*, 39 F.4th at 304.

## B.   The Court is likely to reject plaintiffs' claims on the merits.

Even assuming Plaintiffs have standing, their claims lack merit. The district court overstated the burdens on voting created by S.B. 1111, misinterpreted state law, and entered relief that is overbroad compared even to the district court's own reasoning.

### 1.   P.O.-box provision

The district court's analysis of the P.O.-box provision began well, recognizing it furthers important interests by ensuring that voters get the right ballots and preventing voter-registration fraud. App.1103-07. As the district court recognized, individuals can obtain P.O. boxes anywhere, can obtain multiple P.O. boxes, and can even manage them online. App.1106. The district court therefore correctly ruled that, as a general matter, requiring those individuals who register with P.O. boxes to document their residence posed only a reasonable, nondiscriminatory burden on voting that was justified by Texas's interests. App.1107.

The district court veered off course when it singled out individuals who provide a residential address after receiving a confirmation request from a registrar. App.1107-08. The court found the burden of providing documentation of residence

too burdensome in those circumstances. App. 1107-08. The district court erred by applying, in effect, a narrow-tailoring analysis to the P.O.-box provision. When an election law imposes only "reasonable, nondiscriminatory restrictions" upon the Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). It is only when a burden is "severe" that the law must be "narrowly drawn to advance a state interest of compelling importance." *Id.* Moreover, because any voting law will affect some voters more than others, the severity of the burden is measured based on how it affects voters *as a group. Crawford v. Marion Cnty. Elec. Bd.*, 553 U.S. 181, 202-03 (2008) (plurality op.).

Texas "indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989). And providing documentation of residence is a reasonable way to further that goal without severely burdening even most voters who register using a P.O. box. App.1107. That should have been the end of it. *Crawford*, 553 U.S. at 198-99 (plurality op.). The district court erred by considering the burden on an artificially narrow class of voters and improperly equated the consequence of failing to comply—being placed on the suspense list—with the burden of complying. *Id.* The district court also misunderstood Texas law regarding that consequence: a voter on the suspense list may still vote, *contra* App. 1108, provided he submits an appropriate statement of residence at his polling location. Tex. Elec. Code §§ 15.081(a)(1), 15.112, 63.0011. The P.O.-box provision thus does not place an unconstitutional burden on the right to vote.

### 2. Residence provision

The district court next erred in concluding that the residence provision is unconstitutional. App.1108-11. Although the opinion is unclear whether this holding is based on a burden to speech or the vote, neither is correct.[4]

**a.** Intervenor Paxton maintains that the district court's error started when it misinterpreted the residence provision. In construing a statute, Texas courts seek "to determine and give effect to the Legislature's intent," *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003), by looking at the act "as a whole" rather than "isolated portions of it." *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). Moreover, Texas courts must—"if possible"—interpret a statute "in a manner that avoids constitutional infirmity." *Quick v. City of Austin*, 7 S.W.3d 109, 115 (Tex. 1998); Tex. Gov't Code § 311.021(1).

Here, when section 1.015 is read as a whole, the residence provision requires someone to register using their actual residence—not a false address aimed at influencing an election. Subsection (a) provides that a "residence" is a "domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence." Subsection (b), the residence provision challenged here, provides that "[a] person may not establish residence for the purpose of influencing the outcome of a certain election." Taken together, a person may establish any residence he chooses—so long as his intent in doing so is to make that residence his fixed place of habitation. As the Secretary of State's representative explained, an

---

[4] Intervenors Torres and Pendley take no position regarding this issue.

individual thus runs afoul of subsection (b) *only* if he seeks to establish a residence to influence an election *without* making it his home. App.125-30.

The district court erred when it disregarded the limiting construction offered by the Secretary of State. App.123-30. In a pre-enforcement challenge like this one, the Secretary is due some deference as the state official charged with interpreting Texas's election code in the absence of a judicial ruling. *See R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 629 (Tex. 2011); Tex. Elec. Code §§ 31.003, .004. Moreover, "ambiguous statutory language [should always] be construed to avoid serious constitutional doubts." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009).

**b.** Plaintiffs have offered no evidence that the residence provision, when properly interpreted, infringes anyone's speech or right to vote. Subsection (b) does not penalize speech, and despite months of discovery, Plaintiffs failed to identify any individual who was afraid to register to vote because of this provision. App.237-38, 346. Nor have Plaintiffs been able to identify legal support for a right to vote from a fabricated residence, or factual support that any Texas prosecutor would bring criminal charges against someone who *actually moves* to run for office, campaign, or volunteer. For good reason: registrars do not inquire into voters' motives when they process voter-registration applications. App.903. The district court's holding that the residence provision is unconstitutional depends on an overbroad interpretation that does not reflect the law or the evidence offered by Plaintiffs.

### 3.    Temporary-relocation provision

Finally, the district court erred in concluding that the temporary-relocation provision is facially unconstitutional. App.1112-13. But even if the district court were correct that the provision abridges the rights of a subset of college students, the court committed reversible error by enjoining the entire subsection based on such a limited constitutional violation.

**a.**    As relevant here, section 1.015(f) prohibits a voter from "designat[ing] a previous residence as a home and fixed place of habitation unless the person inhabits the place at the time of designation and intends to remain." The district court believed this created a "man without a country" because college students living on campus cannot register using their parents' home, which they do not "inhabit[]." App.1112. Again, this takes subsection 1.015(f) out of context: a college student who intends to return to his parents' home does not need to designate a "*previous* residence" as his residence under section 1.015(f) (emphasis added). Such a student never loses his residence at his parents' home under Texas Election Code section 1.015(c).

As the Secretary's representative testified, section 1.015 effectively allows college students to decide where they reside for purposes of voting. App.137-38. If they intend to return to their parents' home, they may remain registered there. App.138. If they consider their new home to be their college town, they may register there. App.138. Because subsection (f) does not interfere with that choice and does not prevent anyone from registering to vote, it places no burden on the right to vote whatsoever—let alone an unconstitutional one.

**b.** Even if subsection (f) did impose some additional burden on a small subset of voters, the district court's injunction is overbroad in two respects. *First*, a court may not facially enjoin an election law that has a "plainly legitimate sweep." *Crawford*, 553 U.S. at 202 (plurality op.); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). Here, the district court identified only two groups of people allegedly impacted by the temporary-relocation provision: (1) college students living away from home and (2) United States Senators. App.1112. Because this provision does not affect most Texans, a facial injunction was improper. *Crawford*, 553 U.S. at 202 (plurality op.).

*Second*, any remedy must be "limited to the inadequacy that produced the injury in fact," *Lewis v. Casey*, 518 U.S. 343, 357 (1996), and "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Lion Health Servs., Inc. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011). As Texas law presumes that statutes are severable, Tex. Gov't Code § 311.032, the district court should have enjoined only those aspects and applications that Plaintiffs established were unconstitutional. *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-29 (2006). Instead, the district court enjoined the entirety of subsection (f), including the first sentence that prohibits a person from establishing a residence at any place they have not inhabited, which no one has asserted is unconstitutional. App.1114. In light of such a blatantly overbroad remedy, this Court is likely to find in favor of Intervenors on the merits of this appeal (if it even gets there).

## II.  The Remaining *Nken* Factors Favor a Stay.

**A.** In addition to being likely to succeed on appeal, the Intervenors also meet the remaining *Nken* factors. Enjoining government officials from carrying out validly enacted, constitutional laws governing elections imposes irreparable harm on the State that Intervenor Paxton represents. *See Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1010-12 (2002). Although it applies in only a handful of counties, it risks inducing confusion among registrars and voters across the State. *See Vote.Org*, 39 F.4th at 309. For example, can county officials who are not subject to the injunction obey a state law that has not been enjoined as to them but has been declared unconstitutional by a federal court? Or are they obliged by their own duties to conform to the Constitution to disobey state law that may yet be held to be valid? What rule applies to a student from Harris County who attends college in Lubbock?

Such confusion constitutes irreparable harm to the State and its officials. "It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'" *Burdick*, 504 U.S. at 433 (citation omitted). And it is one of the most fundamental obligations of the State to ensure "fair and honest" elections, to bring "order, rather than chaos," to "the democratic process[]," and ultimately to allow the right to vote to be fully realized. *Storer v. Brown*, 415 U.S. 724, 730 (1974). Yet the permanent injunction undermines that interest two months before registration for the 2022 general election closes.

**B.** Conversely, Plaintiffs face no harm from a stay pending appeal. Despite months of discovery in this case, they failed to identify any non-speculative harm that they will suffer if the challenged provisions of S.B. 1111 remain in place. They

can continue their voter-registration drives without fear of repercussion because S.B. 1111 does not subject them to criminal liability even if they unintentionally provide a potential registrant with bad advice. And they may continue to make internal resource allocations as they deem best to maximize the success of these drives in light of competing organizational priorities.

**C.** Meanwhile, the public interest favors a stay. In cases like this, the interests of state officials as the appealing party often "merge with" those "of the public" and therefore tip public interest in favor of a stay. *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam). This is particularly true when a district court's order risks confusing voters or incentivizing them to stay away from the polls. *Purcell*, 549 U.S. at 4-5; *see also, e.g.*, *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring in grant of applications for stays). That scrutiny grows as the election nears until during the final weeks or months before an election when "lower federal courts should ordinarily not alter the election rules." *Tex. All. for Retired Ams. v. Hughs*, 976 F.3d 564, 566 (5th Cir. 2020) (per curiam). Here, the voter registration deadline for the November 2022 election is October 11, less than two months away.[5] Under such circumstances, "timing of the decisions rather than their merits seems to be the key." *Veasey v. Perry*, 769 F.3d 890, 895 (5th Cir. 2014). And sixty days out from an election deadline is too late to change the rules of the road. *Husted v. Ohio State Conf. of NAACP*, 573 U.S. 988 (2014).

---

[5] https://www.votetexas.gov/register-to-vote/index.html

### III. The Court Should Enter a Temporary Administrative Stay.

For these reasons, Intervenors are entitled to a stay pending appeal. But the Court should at least enter an administrative stay while the Court considers this motion. Such administrative stays are common in election cases to prevent confusion and other irreparable harm while the Court considers a larger stay. *E.g.*, *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 227-28 (5th Cir. 2020).

## Conclusion

The Court should stay the district court's injunction pending appeal. Alternatively, the Court should immediately enter a temporary administrative stay while it considers this motion.

Respectfully submitted.

<div style="display: flex;">
<div>

Robert Henneke
General Counsel

Chance Weldon
Director of Litigation

/s/ Autumn Hamit Patterson
Autumn Hamit Patterson
Senior Attorney
apatterson@texaspolicy.com

Texas Public Policy Foundation
901 Congress Avenue
Austin, Texas 78701
Tel.: (512) 472-2700
Fax: (512) 472-2728


Counsel for Intervenor Defendants-Appellants Lupe C. Torres and Terrie Pendley

</div>
<div>

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Judd E. Stone II
Solicitor General

/s/ Lanora C. Pettit
Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

Beth Klusmann
Assistant Solicitor General

Christopher J.F. Galiardo
Assistant Attorney General

Kathleen T. Hunker
Special Counsel

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697


Counsel for Intervenor Defendant-Appellant Ken Paxton

</div>
</div>

## CERTIFICATE OF CONFERENCE

On August 15, 2022, counsel for Appellants emailed and phoned counsel for Appellees. Chris Dodge, counsel for Appellees, advised that Appellees are opposed and intend to file a response.

/s/ Lanora C. Pettit
LANORA C. PETTIT

## CERTIFICATE OF SERVICE

On August 15, 2022, this document was transmitted to the Clerk of the Court and served via CM/ECF on all registered counsel. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Lanora C. Pettit
LANORA C. PETTIT

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5116 words, excluding the parts of the motion exempted by rule; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Lanora C. Pettit
LANORA C. PETTIT